LESLIE (DAVIS v.). See Case No. 3,639.

═══

## Case No. 8,275.

### LESLIE v. GLASS.
### LESLIE v. KEYSER.

[Taney, 422.][1]

Circuit Court, D. Maryland. April Term, 1840.

SHIPPING — LIABILITY OF OWNER FOR DEBTS OF BUILDER — DECLARATION THAT HE WILL PAY— ASSIGNMENT BY BUILDER OF INTEREST—LIABILITY OF ASSIGNEE—PROPERTY IN SHIP BUILDING —LIEN ON VESSEL.

1. In general, the party for whom a vessel is built, under a contract with a shipwright, is not liable for the debts contracted by the shipwright on account of the vessel; in such cases, the contracts for work or for materials are usually made by the shipwright for himself and on his own account, in order to fulfil his agreement with the party for whom the ship is built.

2. Where both parties reside in Maryland, and the ship is built there, the mechanics and material men have no lien upon her.

3. Where the party for whom a vessel is built pays the money to the shipwright, according to his contract, he is entitled to the delivery of the

1 [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

vessel, and holds her free and discharged from any claim against the vessel, or against himself personally, on account of work done or materials furnished for the shipwright.

4. In ordinary cases of this description, general declarations made by the party for whom the vessel is built, after the work is done or the materials furnished, that he will pay all bills against the ship, will not bind him, and cannot be enforced in a court of justice.

5. Such promises made after the work is done, are without consideration, and cannot, on that account, be enforced in a court of justice.

6. But if, while the vessel is being built, the person for whom she is being built, makes advances to the shipwright beyond the sums mentioned in their contract, and takes from him an assignment of all his "right, title and interest in the vessel, as she advances in construction, together with all materials collected and to be collected for the same," and conceals the fact of such assignment, with a view to preserve the shipwright's credit, and enable him, under such false credit, to obtain work and materials for the vessel, without subjecting the assignee to responsibility for the same, this would constitute a design which a court of justice can never sanction.

7. The effect of such an assignment would be to divest the shipwright of all interest in the vessel; she would become from that moment the exclusive property of the assignee, not by way of mortgage, but absolutely; all the work already done upon her, as well as all that should be afterwards done, would be for his use and benefit; and all the materials already purchased, or afterwards to be purchased, became his property as soon as they were delivered.

8. Although the creditors, at the time the accounts were created, supposed that the shipwright still retained his interest in the vessel, and that he was dealing with them on his own account, still, all the work done, and materials furnished, after the date of the secret assignment, were for the use of the assignee alone, and justice requires that he should pay the value of them; and this constituted a sufficient and valuable consideration to support his promise to pay.

9. Since, by virtue of the transfer, the assignee obtained all the materials which had been already bought, whether worked up or not, and also the benefit of all the labor which had been already bestowed upon the vessel, there existed a sufficient consideration, in relation to the antecedent portions of the work and materials, as well as the subsequent.

10. The taking of certain bills receivable, or his own note, from the shipwright, by one of the creditors, while in ignorance of the secret transfer, would not impair his right to proceed against the assignee, in the event of the security so taken turning out to be worthless.

11. The extent of the shipwright's property in the vessel before the assignment, cannot affect the principle upon which the case is to be decided, if he had an interest to any extent; whatever that interest was, it passed out of him by the assignment, and the vessel, as she advanced in construction, and the materials were collected for her, became the exclusive property of the assignee, and the shipwright had no longer that interest in them which would have belonged to him by his original contract.

[Appeals from the district court of the United States for the district of Maryland.

[These were libels by John Glass and Samuel Keyser against Robert Leslie.]

The libels in these cases were filed, the one on the 31st of January, and the other on the 25th of February, 1839, to recover the value of labor and materials furnished the ship Scotia, between the months of April, 1838,

and January, 1839. The defendant, Leslie. in each case, answered the libel, and denied that he ever requested or contracted with the libellant to furnish any materials or do any work, for or upon, or in anywise concerning said ship, since he became the owner of her, or at any time before; and he stated that he entered into a contract with William F. Smith, under which, as would thereby appear, said Smith was bound to build and furnish, and deliver to him a vessel, as therein specified; and the respondent exhibited, as part of his answer, the said contract; in pursuance whereof, said Smith did build the vessel, and did receive payment for her from respondent, and had even received a larger amount from respondent than was payable for her, and was now liable for the excess to the respondent. In his answer to the libel filed by Glass, Leslie also suggested to the court, that it appeared by the contract between Smith and himself, that the libellant was surety for Smith's performance thereof, and for saving respondent harmless in the premises, and so answerable for any default of Smith by which respondent might suffer; as must be the case, if said libellant could be entitled to recover in the present cause. The contract exhibited with the answers, was between Robert Leslie, of the first part, and William F. Smith, of the second part, and after setting forth in detail the mode in which the vessel was to be built, it proceeded as follows:

"The contractor on the first part (Leslie) engaging to pay for the same, at the rate of $38 per ton, Baltimore carpenters' measurement, in the following payments, viz:—$1,000 on the 23d of May (1838), $1,500 on the 1st of June, and $2,000 on the 1st of each month till November; the balance in two notes at four and six months from the delivery of the certificate. The ship to be launched on or before the 1st day of December, 1838, and to be built under the inspection of the contractor on the first part; each party furnishing security for the faithful performance of this contract. In witness whereof, we hereunto set our hands and seals, the day and year above named. William F. Smith. [Seal.] Robert Leslie. [Seal.]

"Witness: C. W. Meyer.

"We, the undersigned, do hereby guarantee the performance of the above contract on the part of William F. Smith. Geo. A. V. Spreckelsen. Jno. Glass.

"We, the undersigned, do hereby guarantee the performance of the above contract on the part of Robert Leslie. (Not signed.)"

A decree was passed by the district court in favor of the libellant, in both cases [case unreported], and appeals were taken to this court.

Charles F. Mayer, for appellant.
Glenn and Gatchell, for appellees.

TANEY, Circuit Justice. These two cases have come before the circuit court upon appeals from the district court. They arose upon libels filed to recover money, which the respective libellants alleged to be due to them for work and labor done upon the ship Scotia, or for materials found for her construction, at the request of Leslie. The district court, in each of the cases, decreed in favor of the libellants. and from these decrees, Leslie has appealed to this court. The causes depend upon the same principles, and the decision of one must determine the other.

The case first in order is that of Leslie v. Glass, in which the appellee obtained a decree in the district court for the sum of $757 12, with interest thereon from the 25th day of February, 1839, together with the costs of suit.

It appeared from the testimony, that on the 23d of May, 1838, at the city of Baltimore, a contract in writing was made between the said Leslie and a certain W. F. Smith, master shipwright of the said city, whereby Smith, for the consideration therein mentioned, engaged to build for Leslie, a ship of the dimensions and kind particularly described in the said agreement. In consideration whereof, Leslie agreed to pay Smith $38 per ton, carpenters' measure: $1,000 on the day of the date of the contract; $1,500 on the first of June following, and $2,000 on the first of each succeeding month, till the 1st of November; and the balance in two notes at four and six months from the delivery of the certificate by Smith and Leslie; the ship to be finished on or before the 1st of December, 1838.

The evidence shows, that although Smith had built smaller vessels, yet he had never built a ship, when he undertook the Scotia; and Leslie was aware of that fact. The usual price for a vessel of the description of the Scotia, at the time of the contract was about —— dollars per ton, and the sum agreed on by Smith of $38 per ton, was below the usual price. He did not, it seems, engage in the work with an expectation of making money by it, but he hoped to be able to save himself, and his main object was, to obtain for himself the character of a first-rate ship builder, by constructing this ship of the best materials and in a superior manner. Leslie appears to have been sensible of Smith's object, and that the price mentioned in the agreement was a low one, and at the time the written contract was signed, he promised Smith, verbally, to pay him a half a dollar per ton more than the writing called for. The ship was built under the inspection of Leslie, and the work done in the best manner and of the best materials.

The libellant, Glass, was one of Smith's sureties to Leslie for the fulfilment of his contract. Upon the face of the paper, it would seem, that he signed it after Spreckelsen, the other surety; and Spreckelsen, as has been proved and admitted, signed as surety at the request of Leslie, in order that he might exercise an influence over Smith in

urging on the work, but under an express agreement on the part of Leslie, that he would in no event hold him liable as surety.

It appears also, that after the contract was signed, an alteration was made in the plan of the ship by Leslie, and assented to by Smith. She was made longer and deeper than the written contract called for, and her breadth of beam was not increased. This alteration was in some degree disadvantageous to Smith, and made the construction of the vessel somewhat more expensive in proportion to her tonnage, than the plan set forth in the written contract. The sureties do not appear to have been consulted in relation to this change of plan, nor to have assented to it.

The keel was laid soon after the contract was made; but as early as July the 3d, the confidence of Leslie in the ability of Smith to fulfil his agreement appears to have been shaken, and being, on that day, called on by Smith for an advance of money, beyond the amount he was entitled to under the contract, he took from him the following assignment: "Received, Baltimore, July 3d, 1838, from Robert Leslie, the sum of one thousand dollars, on account of new ship building by me, as per contract; and I hereby assign over to Robert Leslie, all right and title to said ship, as she advances in construction, together with all materials collected and to be collected for the same. William F. Smith."

This assignment was kept secret, and was not known to the sureties of Smith, or any one employed in working upon the ship, or in furnishing materials for her, until Smith stopped payment, as hereinafter mentioned. The work went on, after this assignment, as it did before, and Leslie continued to advance money, from time to time, in order to enable Smith to carry it on. The ship was launched about the 1st of January, which was one month later than the time stipulated in the contract; she was finished four or five weeks after the launch, and measured about five hundred and forty tons.

The difficulties of Smith continued to increase from the time of the assignment above-mentioned; but he entertained hopes of being able to complete the ship, and to pay those who had credited him, until about the time of the launch, relying, as he states, upon the verbal promise of Leslie, that he should not lose by this contract. But about the time last mentioned, a note, which he had given for materials furnished for the vessel, fell due, which he was unable to take up, and applied to Leslie for assistance; Leslie, however, refused to advance any further, and Smith thereupon was obliged to stop payment, because insolvent, and was unable to go on with the work; and much more money was, at that time, due to the mechanics and material men, than was due from Leslie under his written contract.

The ship was launched about the 1st of January, and the situation of Smith having then become public, those who had worked upon the ship, or furnished materials for her, and whose bills were yet unpaid, became uneasy and applied to Leslie upon the subject. He assured those who called on him, that he would pay all just bills against the ship; and in various conversations with other persons who were not interested in their claims, he repeatedly declared that all just bills against the ship should be paid, and requested one of those persons to make the statement known, and to defend him, if he heard any report, imputing to him a contrary intention. In a conversation with a clerk of Smith, the day before the ship was launched, he said, that he had agreed to pay all the bills against the ship, but he would pay nothing more until the ship was launched. It appeared from the evidence, that Smith had applied all the money he had received from Leslie toward the construction of the ship and the purchase of materials for her.

The libellant Glass was employed by Smith to do the outside joiners' work. It was all done after the assignment hereinbefore mentioned, according to the testimony, and a small portion of it, after the ship was launched, and after the assurances abovementioned had been given by Leslie, and had become publicly known among the persons engaged upon the ship About the month of January, after the ship had been launched, certain bills receivable were transferred to Glass by Smith; but they do not appear to have been on account of the present claim, although there is some controversy on that point; the bills could not be collected, and were returned by Glass to Smith.

Since the ship has been completed, Leslie has refused to pay these libellants and others who worked upon the ship, on the ground that the credit was given to Smith, and not to him; and the question is: Is the libellant entitled to recover the amount from Leslie? In general, the party for whom a vessel is built, under contract like the one now before the court, is certainly not liable for the debts contracted by the shipwright. In such cases, the contracts for work or for materials, are usually made by the shipwright for himself and on his own account, in order to fulfil his agreement with the party for whom the ship is built. Where both these parties reside in Maryland, and the ship is built in this district (as is the case with the parties and the vessel now before the court,) the mechanics and material men have no lien upon her; and where the party for whom she is built, pays the money to the shipwright, according to his contract, he is entitled to the delivery of the vessel, and holds her free and discharged from any claim against the vessel, or against himself personally, on account of work done or materials furnished for the shipwright. The mechanics and material men have no equity against the party for whom the ship is built, under such a contract; the credit is not given to him by the mechanics or material men, but to the ship-

wright who employs them, or with whom they deal.

In ordinary cases of this description also, general declarations, made by the party for whom the vessel is built, after the work is done, or the materials furnished, that he will pay all bills against the ship, will not bind him, and cannot be enforced in a court of justice. And this is the case, even if the vessel turns out to be worth much more money than the party paid for building her; and although the shipwright sinks money on his contract, and becomes insolvent and unable to pay the workmen and material men; for, as there is no lien on the vessel, and the work is done for the benefit of the shipwright, and the credit is given to him alone, the party who has fulfilled his contract with him, and thereby become the exclusive owner of the vessel, is under no obligation, legal or moral, to pay the mechanics or material men, whom the shipwright employed in his own work upon the ship. Consequently, any promises made by this party, after the work is done, are without consideration, and cannot, on this account, be enforced in a court of justice.

But the case before the court is a very different one from the ordinary contracts under which vessels are built. The evidence shows that, within a month after the ship was begun, Smith became involved in difficulties, and was unable to go on with the work, without advances from Leslie greater than those mentioned in the contract; when Smith's situation became known to Leslie, and he was called upon, early in July, to make those advances, it is evident, that he lost confidence in Smith's ability to comply with his engagement, and to secure himself, took from him the comprehensive assignment hereinbefore mentioned. Now, it cannot be doubted, that if this assignment had become known to the workmen employed upon the vessel, and to the persons from whom Smith was procuring materials, that they, too, would have lost confidence in the ability of Smith to comply with his contracts, and would have required something more than his mere personal responsibility, before they bestowed their labor upon or sold materials for a ship, in which Leslie had acquired the exclusive interest, and in which Smith had no longer any title.

The motive for keeping secret this assignment cannot be mistaken; it was to preserve Smith's credit, and by that means to enable him to go on with the ship. This concealment gave him a false credit, and if Leslie intended by that means to obtain, upon the credit of Smith, the labor and materials necessary to build the ship, without becoming personally responsible himself, it was a design which a court of justice can never sanction; for, in this aspect of the case, what is the result? Leslie knew Smith's difficulties, and to secure himself, had taken an assignment of the whole inter-

est of Smith in the ship, "as she advanced in construction, together with all the materials collected, and to be collected, for the same." After this comprehensive transfer was made, the men who furnished materials, and the men who worked on the ship, were still left to suppose that Smith's property in the vessel remained unchanged, and Leslie well knew that they were dealing with him under that impression; and yet every plank that was nailed upon the ship, became immediately the property of Leslie, as well as every pound of iron or other material furnished for the ship. These things were all, in fact, procured by Smith for Leslie's use, and if Leslie did not intend to become responsible for them, and designed to avail himself, in this way, of the false credit which the concealment of the transfer above-mentioned gave to Smith, such conduct on his part would have been a fraud upon the creditors. And if he could establish by proof that he took the assignment, intending not to be responsible for the necessary expenses of building the ship, of which he had then become the exclusive owner, it would not strengthen his defence. He would be made responsible for the benefits he had received by the false credit, which his concealment of the assignment would have given to Smith.

But it would hardly be just to the appellant, to decide the case upon this ground. The court is satisfied, that at the time the contract was made, he supposed that Smith would be able to make some money by it; and when he took the assignment to secure himself, he supposed that the cost of the ship would not very far exceed the amount mentioned in the contract, and believed it would be for the advantage of Smith, as well as himself, to sustain Smith's credit, by concealing the assignment until the work was finished. The excess of the cost over the sum anticipated, appears to have been much larger than he expected; and the ship was hardly finished, when, notwithstanding his assurances that the bill should be paid, one of these libels was filed against him. I am persuaded, from a view of the whole evidence, that the present defence is owing more to the irritation occasioned by these circumstances, than to any deliberate design to break the promises he had made, or to be unjust to the creditors.

But however this may be, the legal effect of the assignment was to divest Smith of all interest in the vessel; she became, from that moment, the exclusive property of Leslie; all the work already done upon her, as well as all that should be afterwards done, was for his use and benefit; and all the materials already purchased, or afterwards to be purchased, became his property as soon as they were delivered. From the time of the transfer, therefore, Smith was nothing more than Leslie's agent, managing Leslie's property for him. The assignment was not a mere mort-

gage, as has been argued, but an absolute transfer, and Leslie had a right, under it, to select the materials to be bought for the ship, and to designate the workmen to be employed, and to agree on the prices to be paid; and whether he exercised this power in his own person, or allowed Smith to act for him, is not material to the present question. In either case, Leslie was, in substance, the principal and Smith the agent, after this assignment, and the work afterwards done, and the materials afterwards bought, were exclusively for Leslie's use.

This being the case, the promises afterwards made by Leslie, are by no means promises without consideration. It is true, that the creditors, at the time the accounts were created, supposed that Smith still retained his interest in the vessel, and believed that he was dealing with them on his own account; but it turns out that Smith had no property in the ship after the third of July, and that all of the work done and materials furnished after that time were for the use of Leslie alone; and as Leslie has received all the benefit of this labor and of these materials, justice requires that he should pay the value of them; and they are a sufficient and a valuable consideration to support the promises he afterwards made.

It has been argued, that a portion of the libellant's claim arose before the transfer of the ship and materials to Leslie, and stand upon different principles from that part of it which accrued afterwards. But assuming this to be the fact, yet, Leslie admitted the right of the libellant to the whole bill, and made no distinction in his promises and admissions between different portions of it; and since, by virtue of the transfer, he obtained all the materials which had been already brought, whether worked up or not, and also the benefit of all the labor which had been already bestowed on the ship, undoubtedly, there is a sufficient consideration, in relation to the antecedent portions of the work and materials, as well as the subsequent.

These promises appear to be nothing more than the admissions of Leslie, of the obligations imposed upon him by the original understanding between Smith and himself. When the contract was originally made, and made below the ordinary market price, Leslie assured Smith that he should lose nothing by it; he appears to have desired a first rate ship, and he relied on Smith to build him such a one, in all respects, as he desired. And while he, very naturally, wished to do this in an economical manner, yet he had determined to spare no expense necessary to accomplish his object; hence, we find him, in the early part of July, as hereinbefore mentioned, advancing money to Smith beyond the amounts stipulated in the agreement; we find these advances carried on until the vessel was completed; and instead of giving his notes at four and six months to Smith, for a large balance, which, according to the written agreement, was expected to be still in Leslie's hands when the ship was launched, we find that he had paid, by that time, very nearly the whole amount in the agreement, and we find him actually paying a bill for copper, after the ship was finished, although the bill exceeded the small amount of the balance still in his hands, and due from him according to the written terms of the contract. Why should this payment have been made, unless he felt himself bound in justice to pay it? And how could he be bound to pay, unless it was procured for his use, either by himself in person or through the agency of Smith? In either case, the claim stood upon the same footing with the other bills, and if justice required him to pay this one, the same obligation exists as to the others.

The bills receivable taken from Smith, by the libellant, if taken in part payment of this account, would in no degree affect the controversy; these bills were never paid, and were returned to Smith shortly afterwards; the character of the debt, as originally due to the libellant, remained unaltered, and if Leslie was liable before this transfer, he was equally liable after these bills receivable were returned to Smith. The act of taking them, or of taking Smith's note, would only show that the parties gave the credit to Smith when the accounts were originally created, and were not aware that they had any remedy against Leslie. The fact that the credit was so originally given, is undisputed, it applies to all the accounts, and was evidently given to Smith, under the impression that the work and materials were for his benefit; for all of the workmen and material men appear to have been ignorant of the understanding between Leslie and Smith, and unacquainted with his embarrassments, and with the assignment made by him to Leslie.

I have not thought it necessary to examine into the extent of the property which Smith held in the vessel, previously to his assignment. It has been a good deal discussed in the argument; but it is admitted on all hands, that he had a property in the ship to some extent; and it can make no difference in the principle upon which this case is decided, whether that property was greater or less; whatever it was, it passed out of him by the assignment, and the vessel, as she advanced in construction, and the materials that were collected for her, became the exclusive property of Leslie, and Smith had no longer that interest in them which would have belonged to him by his original contract.

I have entertained some doubts as to the amount charged by libellant; the testimony of Costigan is certainly strong, to show that the outside joiners' work ought not to have cost the amount charged for it; and this testimony is supported by that of Robb, who has, for a long time, been a shipwright in Baltimore, and has had much experience in that line; but it appears, that the libellant was employed by Leslie himself to do the inside

joiners' work on the ship, and that Leslie settled with him upon terms precisely the same with those claimed for the outside work; that is to say, the charges in both cases is a per diem charge at the same rate of wages. Leslie can hardly complain of the price charged for the outside joiners' work, when he employed the same person, and at the same rate of wages, to do the inside joiners' work for the same vessel. The inside joiners' work was not, under the original contract, to be done by Smith; it is not usually done by the shipwright, but by the person for whom the vessel is built, and Leslie employed the libellant to do it.

In the answer of Leslie, he insists upon the liability of Glass to him, as one of the sureties of Smith in the written contract, as a part of his defence against this claim; but this ground has not been relied on at the trial, and it is unnecessary, therefore, to remark upon it.

The case of Keyser v. Leslie must be governed by the principles upon which the case of Glass has been decided. It is for the iron used in the construction of the ship. It is true, that all of the iron had been delivered before the declarations and promises of Leslie, hereinbefore mentioned, and some of it before the assignment; but in the view taken by this court, that circumstance does not, in any material respect, distinguish it from the case of Glass; for the right of the last-mentioned party to recover, does not depend on the small portion of the outside joiners' work that was done after these promises were made. His right to recover, as will appear by reference to the aforegoing opinion, depends on principles altogether independent of that small part of the work, and which apply in all respects, with equal force, to the claim of Keyser, and apply to the materials furnished before the assignment as well as after.

These claims are, however, cases of some hardship to Leslie; the ship has cost more than such a vessel ought to have cost, built in the best manner. It is, indeed, sufficiently established by the evidence, that Smith honestly applied the money he received for building the ship; yet, from want of experience in the construction of large vessels, or from some other cause, more money per ton has been expended upon her, than was laid out upon other larger vessels built in Baltimore about the same time; and which appear to have been, perhaps, as well built as the one in question. Nor are these libellants altogether free from blame, in suffering these accounts thus to accumulate, and to remain so long unsettled, without applying to Leslie to know Smith's situation, and also to apprise him of the accounts which Smith was suffering to accumulate, and to remain so long in arrear. If Leslie is compelled to pay the principal amount of the bills, with the interest and costs recovered against him in the district court, it is all that justice can require of him, and as much as the creditors can rightly demand. I shall therefore give neither interest nor costs in the circuit court, and shall merely affirm the decrees of the district court.